**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRANCES E. BOICE, as Administratrix** | : | |
| **of the Estate of Eugene Thomas Rought** | : | |
| **and on behalf of Debra Rought, Scott** | : | |
| **R. Rought, Lindsay A. Banks, Brian** | : | |
| **Gacha and James E. Rought** | : | |
| **Plaintiffs** | : | |
| v. | : | **3:CV-06-1709** |
| | : | **(JUDGE VANASKIE)** |
| **TYLER MEMORIAL HOSPITAL, GARY D.** | : | |
| **D. RUSSELL, M.D., JOHN F. MCINTYRE,** | : | |
| **M.D., DANIEL L. COSTER, D.O., COUNTY** | : | |
| **OF WYOMING, WYOMING COUNTY** | : | |
| **CORRECTIONAL FACILITY, WARDEN** | : | |
| **MICKEY AMEIGH, COMMUNITY** | : | |
| **COUNSELING SERVICES OF WYOMING** | : | |
| **COUNTY, COMMUNITY COUNSELING** | : | |
| **SERVICES OF NORTHEAST PA,** | : | |
| **COMMUNITY COUNSELING SERVICES** | : | |
| **OF NORTHEAST PA-A DIVISION OF** | : | |
| **BEHAVIORAL HEALTH SERVICES OF** | : | |
| **WYOMING VALLEY, DANIEL C.** | : | |
| **MORIARITY, RAKESH SHARMA, M.D.,** | : | |
| **CORPORAL GARY JURISTA, OFFICER** | : | |
| **JEAN CLARK, OFFICER RICHARD** | : | |
| **DUNNE, OFFICER BRENDAN NOTO,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Frances E. Boice, Administratrix of the Estate of Eugene Thomas Rought ("Mr.

Rought"), filed suit on behalf of Mr. Rought's family, alleging federal and state law claims

against Tyler Memorial Hospital, Community Counseling Services of Wyoming County,

Community Counseling Services of Northeast PA., Community Counseling Services of

Northeast PA - A Division of Behavioral Health Services of Wyoming Valley, and the Wyoming County Correctional Facility and their employees and agents for the death of Mr. Rought.  Mr. Rought allegedly manifested conspicuous suicidal tendencies and unstable mental conditions, which his caretakers and physicians purportedly ignored and overlooked, thus resulting in Mr. Rought taking his own life.

Defendants John F. McIntyre ("Dr. McIntyre"), Daniel L. Coster ("Dr. Coster"), Community Counseling Services of Wyoming County, Community Counseling Services of Northeast PA., Community Counseling Services of Northeast PA - A Division of Behavioral Health Services of Wyoming Valley ("Community Counseling Services"), Daniel C. Moriarity ("Mr. Moriarity"), and Rakesh Sharma ("Dr. Sharma") have moved to dismiss this action because of the immunity provisions of  the Mental Health Procedures Act (MHPA), 50 P.S. § 7114(a); the absence of factual averments amounting to gross negligence and recklessness; the lack of causation between their alleged conduct and Mr. Rought's suicide; and the running of the statute of limitations.  The other Defendants have not moved to dismiss the case at this time.

Defendants' motions will be granted in part and denied in part.  Pursuant to 50 P.S. § 7114(a), which grants Defendants immunity from negligence, Defendants' motions will be granted with respect to any negligence claims.  Because, however, Plaintiff has alleged facts sufficient to support a finding of gross negligence and recklessness and that Defendants'

2

actions were a substantial factor in causing Plaintiff's death, and Plaintiff filed suit within the statute of limitations period, Defendants' motions to be dismissed from this action will be denied.[1]

## I. BACKGROUND

On June 10, 2004, Eugene Thomas Rought was committed to the Wyoming County Correctional Facility for a six month period as a result of his failure to pay child support. (Compl., Dkt. Entry 01, ¶ 46.) Approximately one month later, after seeking employment, Mr. Rought received a Court Order granting him work release each day from 8:00 a.m. to 8:00 p.m. (Id., ¶ 49.) Later, on July 28, 2004, Mr. Rought failed to return from his scheduled work release or to report to authorities the reason for his absence. (Id.,¶ 50.)

Early the next morning, July 29, 2004, the Pennsylvania EMS was dispatched to assist the Pennsylvania State Police with a male (Mr. Rought) who had consumed gasoline and expressed an intention to commit suicide. (Id., ¶ 52.) Mr. Rought was immediately transported by ambulance to Tyler Memorial Hospital, where a nurse treated and diagnosed him with anxiety, ineffective coping, self harm potential, and violence potential. (Id., ¶¶ 58-74.)

Dr. McIntyre subsequently examined Mr. Rought and diagnosed him with suicidal ideation and alcohol ingestion, (id., ¶¶ 76-83) and declared Mr. Rought "cleared medically for

---

[1] The Court has subject matter jurisdiction under 28 U.S.C. § 1343(a)(3) for the claims arising under the Civil Rights Act, 42 U.S.C. § 1983, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

3

police." (Id., ¶ 85.)  Mr. Rought then returned to Wyoming County Correctional Facility, where he was placed on fifteen minute watch and thirty days of look-down.  (Id., ¶¶ 101-102.)  Mr. Rought resided in look-down until August 3, 2004, when he was moved to an isolation cell. (Id., ¶ 113.)

On August 6, 2004, Mr. Rought experienced chest pain and trouble breathing, and was transported to the Tyler Memorial Hospital Emergency Room and treated by Dr. Gary D. Russell ("Dr. Russell") and Dr. McIntyre. (Id., ¶¶ 115-120.)  Mr. Rought was diagnosed with costochondral pain, hypertension and hyperlipidemia, and transferred to the care of Dr. Russell "because he is the jail physician." (Id., ¶¶ 126, 127.)  On August 7, 2004, Dr. Russell said Mr. Rought needed something stronger than Ibuprofen and discharged Mr. Rought to the Wyoming County Correctional Facility. (Id., ¶¶ 130, 131.)

The next day, August 8, 2004, after church services, Mr. Rought complained of chest pain, slumping in his chair and falling to the ground. (Id., ¶ 136.)  Mr. Rought was again transported to the Tyler Memorial Hospital Emergency Room, where Dr. Coster diagnosed him with chest wall pain, pleuritic chest pain, and costochondritis, and discharged him to the Wyoming County Correctional Facility with instructions to take Motrin and rest for twenty-four hours. (Id., ¶¶ 138-140.)

On August 10, 2004, Mr. Rought wrote a note requesting to continue seeing Mr. Moriarity from Community Counseling Services.  (Id., ¶ 166.)  On August 25, 2004, Mr. Rought

complained of pain in his chest, whereupon Dr. Russell examined him and diagnosed him with "chest pain probably secondary to anxiety." (Id., ¶¶ 181, 182.) Three days later, on August 28, 2004, Mr. Rought again complained of chest pain and Dr. Russell diagnosed him with chest pain that appears non-cardiac. (Id., ¶ 185.) On the same day, Mr. Rought was transported to the Tyler Memorial Hospital for an EKG and blood work. (Id., ¶ 188.) On August 29, 2004, an officer observed Mr. Rought fall on his way back from the gym, but did not believe that the fall was real. (Id., ¶ 190.)

On August 31, 2004, Mr. Moriarity of Counseling Services of Wyoming County consulted with Mr. Rought and noted his anxiety and panic attack related symptoms. (Id., ¶ 193.) Later that evening, at approximately 5:40 p.m., officers found Mr. Rought in his isolation cell with a torn sheet around his neck which was secured to a vent grate near the ceiling. (Id., ¶¶ 196-198.) The officers performed CPR and minutes later the ambulance crew arrived, applied an automatic external defibrillator, and subsequently transported Mr. Rought to Tyler Memorial Hospital. Their efforts were unsuccessful, and Mr. Rought died of asphyxiation and cardiac arrest that evening. (Id., ¶¶ 204-209.)

Plaintiff alleges Defendants Dr. McIntyre and Dr. Coster were negligent, grossly negligent, and reckless in failing to properly assess and treat Mr. Rought, failing to develop an appropriate plan of care when they knew of his condition, failing to recognize the seriousness of his condition, consciously ignoring Mr. Rought's emergent mental state, improperly discharging

him, and failing to properly advise the Pennsylvania State Police and the Wyoming County Correctional Facility of the severity of Mr. Rought's mental state and suicidal ideation.  (Id., ¶ 222.)

In a similar manner, Plaintiff alleges Defendants Community Counseling Services, Mr. Moriarity and Dr. Sharma were negligent, grossly negligent, and reckless in failing to recognize the severity of Mr. Rought's life threatening mental condition (when they knew or should have known about his suicidal thoughts, attempted suicide, and anxiety and panic attack symptoms), failing to review the ER and EMS records, failing to order proper precautions and interventions in caring for Mr. Rought, and failing to properly advise the Wyoming County Correctional Facility of the severity of Mr. Rought's mental state.  (Id., ¶ 233.)   Specifically, Plaintiff alleges that Dr. Sharma, who never saw or examined Mr. Rought, was negligent, grossly negligent and reckless for failing to examine Mr. Rought when he knew or should have known of the severity of Mr. Rought's risk of suicide.

## II. DISCUSSION

### A. Standard for Rule 12(b)(6) Motion to Dismiss

The standard the Court applies when addressing a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), is well-settled.  In considering a motion to dismiss, the Court must accept all well-pled facts of the complaint as true, as well as all reasonable inferences drawn therefrom.  Javorski v. Nationwide

Mutual Ins. Co., No. 3:06-CV-1071, 2006 WL 2225851, at *7 (M.D. Pa. Aug. 2, 2006).  A motion to dismiss under Rule 12(b)(6) should only be granted where "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Id. at *6 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The moving party bears the burden to establish the absence of an actionable claim.  Id. at *7 (citing Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980)).

### B.  Count IV and VII:  Negligence under the Mental Health Procedures Act

Defendants claim immunity from negligence pursuant to the MHPA, 50 P.S. § 7114(a), which affords certain health care providers limited immunity from civil and criminal liability for specific decisions regarding treatment of a mentally ill patient.  It provides:

> (a) In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or for any of its consequences.

50 PA. STAT. ANN. § 7114(a)(West 1978).  Accordingly, immunity is available to individuals and institutions charged with providing treatment to the mentally ill absent willful misconduct or gross misconduct.  See Farago v. Sacred Heart Gen. Hosp., 562 A.2d 300, 303 (Pa. 1998).  Furthermore, the Pennsylvania Supreme Court broadly interpreted this statute "to encompass

organizational entities, including corporations, partnerships and associations as well as natural persons." Id. at 416; see also Allen v. Montgomery Hosp., 696 A.2d 1175, 1178 (Pa. 1997) (finding a hospital is a person within the meaning of this section).

Defendants Dr. McIntyre, Dr. Coster, Mr. Moriarity and Dr. Sharma are physicians or authorized persons, (Compl. ¶¶ 15, 16, 19, 20, 35,36, 40, 41), who participated in decisions regarding Plaintiff's mental health, (id., ¶¶ 81, 83, 120, 139, 166), and consequently fall within the ambit of this statute. Likewise, Community Counseling Services, an organizational entity, qualifies as a person under this statute. Farago, 562 A.2d at 303. Therefore, any negligence claim against the aforementioned Defendants is precluded and Counts IV and VII of the Complaint are dismissed to the extent that they purport to present claims based upon negligent conduct.

### C. Count IV and VII: Gross Negligence and Recklessness Under the MHPA

Defendants also contest Plaintiff's claims of gross negligence and recklessness under the MHPA. Gross negligence, as defined by the Pennsylvania Supreme Court for the purposes of the MHPA, constitutes "a form of negligence where facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care." Albright v. Abington Mem'l Hosp., 696 A.2d 1159, 1164 (Pa. 1997). It should be further noted that the "determination of whether an act or failure to act constitutes gross negligence is for a jury, but

may be removed from consideration by a jury and decided as a matter of law only where the case is entirely free from doubt and there is no possibility that a reasonable jury could find gross negligence." Id. at 1165.

The Pennsylvania Supreme Court has defined reckless or wanton misconduct in the following manner:

> "The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent."

Martin v. Johns-Manville Corp., 494 A.2d 1088, 1096-97 (Pa. 1985).

The Pennsylvania Supreme Court also recognizes a distinction between gross negligence and recklessness. The Court explained:

> wanton [or reckless] misconduct is something different from negligence however gross, – different not merely in degree but in kind, and evincing a different state of mind on the part of the tortfeasor. Negligence consists of inattention or inadvertence, whereas wantonness exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong.

Kasanovich v. George, 34 A.2d 523, 525 (Pa. 1943).

Plaintiff avers in her complaint that Dr. McIntyre and Dr. Coster failed to properly assess and treat Mr. Rought on July 29, 2004, as well as on August 6,7 and 8, 2004, (Compl. ¶ 222(a));  failed to develop an appropriate plan of care for Mr. Rought based on his suicidal

ideation, (id., ¶ 222(b)); failed to properly review Mr. Rought's prior records, (id., ¶ 222(o)); and failed to properly advise the Wyoming County Correctional Facility of Mr. Rought's condition and consciously ignored Mr. Rought's emergent mental state. (Id., ¶ 222(h).)  These alleged failures go well beyond ordinary laxity or indifference; these failures grossly deviate from the ordinary standard of care and amount to gross negligence.  See, e.g., Bloom v. Dubois Reg'l Med. Center, 597 A.2d 671, 679 (Pa. Super. 1991) (finding that the complaint pleaded facts sufficient for gross negligence because the physicians completely failed to diagnose the Plaintiff's mental condition and treat her in a manner that would protect her from serious physical harm).  Additionally, these alleged failures amount to recklessness or a conscious indifference.  The Complaint supports a reasonable inference that Defendants consciously ignored Mr. Rought's mental state and suicidal ideation, which gravely affected his safety and so significantly departed from ordinary care as to denote reckless conduct.

      Plaintiff also avers that Community Counseling Services, Mr. Moriarity and Dr. Sharma failed to recognize the severity of Mr. Rought's life threatening condition when they knew or should have known about his suicidal thoughts, and his anxiety and panic attack related symptoms, (Compl. ¶ 233(a)), but nonetheless failed to order proper precautions and/or interventions in caring for Mr. Rough (Compl. ¶ 233(c)), and failed to advise the Wyoming County Correctional Facility of the severity of Mr. Rought's mental state. (Compl. ¶ 233(e).)

      The alleged failure of Defendants Community Counseling Services, Mr. Moriarity and Dr.

Sharma to recognize Mr. Rought's life threatening mental condition – the very purpose of the counseling service in this case – is sufficient to sustain a reasonable inference that they were grossly negligent.  Furthermore, failing to advise the Wyoming County Correctional Facility of Mr. Rought's conspicuous life threatening condition when Defendants knew or should have known of the danger, and thereby placing Mr. Rought in significant danger, suffices to support an inference that the Defendants were reckless.

Dr. Sharma specifically contests that Plaintiff has failed to allege any facts that would even support a claim of negligence against him. (Def. Sharma's Mot. Dismiss, Dkt. Entry 62, at 6.) Plaintiff has plead that Dr. Sharma is an employee of Community Counseling Services, (Compl. ¶ 39), and that Dr. Sharma was the supervising physician of Defendant Moriarity. Plaintiff further alleges that Dr. Sharma was on notice of facts suggesting the need for greater intervention in Mr. Rought's mental health issues.  Plaintiff asserts that Dr. Sharma merely signed off on Mr. Moriarity's session notes, without further inquiry, despite obvious indications of a substantial risk of self harm.  (Id., ¶ 230(h).)  It may be reasonably inferred from the averments that Dr. Sharma acted with gross negligence and recklessness.

Therefore, Defendants' motions to dismiss Counts IV and VII with respect to gross negligence and recklessness will be denied.

**D.  Causation**

Dr. McIntyre and Dr. Coster move to dismiss Plaintiff's complaint for lack of causation.

11

(Def. McIntyre's Mot. Dismiss, Dkt. Entry 61, at 7; Def. Coster's Mot. Dismiss, Dkt. Entry 68, at 7.) Defendants argue that their involvement in this matter, occurring weeks before Mr. Rought's decision to take his own life while in custody of the Wyoming County Correctional Facility, is too attenuated to be causally linked to Mr. Rought's death. (Def. McIntyre's Mot. Dismiss, 7; Def. Coster's Mot. Dismiss, 7.)

The test to establish causation is whether the Defendant's acts or omissions were a "substantial factor" in bringing about the plaintiff's harm. Wilder v. United States, 230 F. Supp. 2d 648, 654 (E.D. Pa. 2002) quoting First v. Zem Zem Temple, 686 A.2d 18, 21 (Pa. Super. Ct. 1996); Jones v. Montefiore Hosp., 431 A.2d 920, 924 (Pa. 1981). It is the court's responsibility to evaluate the alleged facts and refuse to find an actor's conduct the legal cause of harm when it appears to the court highly extraordinary that the actor's conduct should have brought about the harm. See Brown v. Phila. Coll. of Osteopathic Med., 760 A.2d 863, 868 (Pa. Super. Ct. 2000).

In the physician-patient context, Pennsylvania law provides that "if a treatment facility commits gross negligence in its decision to discharge or not to evaluate, treat, or commit a patient, then the facility is liable for any harm it substantially caused to any foreseeable victims." Dejesus v. U.S. Dep't of Veterans Affairs, 384 F. Supp. 2d 780, 800 (E.D. Pa. 2005). Moreover, once a plaintiff has demonstrated that a defendant's acts or omissions have increased the risk of harm to another, such that a reasonable jury could find that such

increased risk was a substantial factor in bringing about the resultant harm, the necessary proximate cause case will have been made out.  Jones, 431 A.2d at 924.

In the case at bar, given his alleged life-threatening condition, prior attempt to commit suicide, and suicidal ideation, it may be inferred that Mr. Rought was a danger to himself. Defendants Dr. McIntyre and Dr. Coster's failure to recognize Mr. Rought's life-threatening condition, conscious disregard for his mental state, and improper discharge to the Wyoming County Correctional Facility may be sufficient to constitute a substantial factor in causing his death.  Even though three weeks or a month had passed since Defendants' counseling and treatment and Mr. Rought was under the supervision of the Wyoming County Correctional Facility when his death occurred, the omission of Defendants could be regarded as a substantial factor in causing Mr. Rought's death.  Moreover, the death of Mr. Rought is not a highly extraordinary event that is unforeseeable, especially considering his suicidal ideation and prior attempt of suicide.  See   Sherk v. County of Dauphin, 614 A.2d 226, 232 (Pa. 1992) (declining to dismiss complaint alleging liability for prematurely discharging a mental patient, who subsequently shot another person six weeks later).

### E.  Statute of Limitations Defense

Finally, Defendants Dr. McIntyre and Dr. Coster assert that Plaintiff's claim is time barred  (Def. McIntyre's Mot. Dismiss, Dkt. Entry 61, at 7; Def. Coster's Mot. Dismiss, Dkt. Entry 68, at 7.)  Under Pennsylvania law, there is a two year filing period for "an action to

recover damages for injuries to the person or for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another." 42 PA. CONS. STAT. ANN. § 5524(2) (West 2004). The cause of action for a tort action accrues when there is the concurrence of (a) a breach of duty, (b) harm proximately resulting from that breach of duty, and (c) damages flowing therefrom. Redeker v. Johns-Manville Products Corp., 571 F. Supp. 1160,1168 (W.D. Pa. 1983). In computing the time in which the action must be brought, the day on which the cause of action arose is omitted and the last day of the period is included. Perrine v. Heishman, 253 F. Supp. 68, 69 (M.D. Pa. 1966).

In the instant case, the harm alleged is the death of Mr. Rought, which occurred on August 31, 2004. Plaintiff had two years to file the complaint, which included the last day of the period, August 31, 2006. Since Plaintiff filed her action on August 30, 2006, it is within two year limitations period. Therefore, Plaintiff's claim is not barred by the statute of limitations.

### III. CONCLUSION

For the reasons set forth above, this Court will grant Defendants' motions to dismiss with respect to Plaintiff's negligence claims in Counts IV and VII, but will deny Defendants' motions to dismiss with respect to Plaintiff's gross negligence and recklessness claims in Counts IV and VII and all other Counts. An appropriate Order follows.

<div style="text-align: right;">

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge

</div>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FRANCES E. BOICE**, as Administratrix : <br> of the Estate of Eugene Thomas Rought : <br> and on behalf of Debra Rought, Scott : <br> R. Rought, Lindsay A. Banks, Brian : <br> Gacha and James E. Rought : <br>             **Plaintiffs** : <br>    v.                                                     : <br>                                                         : <br> **TYLER MEMORIAL HOSPITAL, GARY D.** : <br> **D. RUSSELL, M.D., JOHN F. MCINTYRE,** : <br> **M.D., DANIEL L. COSTER, D.O., COUNTY** : <br> **OF WYOMING, WYOMING COUNTY** : <br> **CORRECTIONAL FACILITY, WARDEN** : <br> **MICKEY AMEIGH, COMMUNITY** : <br> **COUNSELING SERVICES OF WYOMING** : <br> **COUNTY, COMMUNITY COUNSELING** : <br> **SERVICES OF NORTHEAST PA,** : <br> **COMMUNITY COUNSELING SERVICES** : <br> **OF NORTHEAST PA-A DIVISION OF** : <br> **BEHAVIORAL HEALTH SERVICES OF** : <br> **WYOMING VALLEY, DANIEL C.** : <br> **MORIARITY, RAKESH SHARMA, M.D.,** : <br> **CORPORAL GARY JURISTA, OFFICER** : <br> **JEAN CLARK, OFFICER RICHARD** : <br> **DUNNE, OFFICER BRENDAN NOTO,** : <br>             **Defendants** : | **3:CV-06-1709** <br> **(JUDGE VANASKIE)** |

**ORDER**

  **NOW, THIS 28th DAY OF SEPTEMBER, 2007,** for the reasons set forth in the

foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

  1.  Defendants' motions to dismiss (Dkt. Entries 54, 56, and 60)are **GRANTED** with

respect to the negligence claims in Counts IV and VII.

2. Defendants' motions to dismiss are **DENIED** in all other respects.

                                          **s/ Thomas I. Vanaskie**
                                          Thomas I. Vanaskie
                                          United States District Judge